Guy Hamilton JONES, Sr., Appellant,

v.

UNITED STATES of America et
al., Appellees.

Guy Hamilton JONES, Sr., Appellant,

v.

W. H. DILLAHUNTY et al., Appellees.

Nos. 75–1812, 75–1813.

United States Court of Appeals,
Eighth Circuit.

Submitted May 11, 1976.

Decided June 9, 1976.

Phil Stratton, Conway, Ark., for appellant; Guy Jones, Jr., Conway, Ark., on brief.

Barbara L. Herwig, Atty., Appellate Section, Civ. Div., Dept. of Justice, Washington, D. C., for appellees; Rex E. Lee, Asst. Atty. Gen., and Robert E. Kopp, Atty., Dept. of Justice, Washington, D. C., on brief.

Before BRIGHT, STEPHENSON and WEBSTER, Circuit Judges.

STEPHENSON, Circuit Judge.

This appeal concerns the district court's [1] dismissal of consolidated civil actions for

1. The Honorable Warren K. Urbom, United States District Judge for the District of Nebraska, sitting by designation.

damages brought by appellant Jones against the United States, members of the United States Attorney's office, a United States Marshal, and various other federal officials alleging a deprivation of his constitutional rights based upon allegations of illegal jury tampering in connection with his aborted criminal trial on charges of tax evasion and perjury. *Jones v. United States*, 401 F.Supp. 168 (E.D.Ark.1975). Appellant asserts error in the district court's findings that no claim upon which relief could be granted was stated under the Federal Tort Claims Act (28 U.S.C. § 1346(b)), 42 U.S.C. § 1985(2), or the damage rationale expressed in *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1970). We affirm the district court's dismissal.

The facts reveal that on July 14, 1972, during the course of appellant Jones' trial on criminal tax charges, the court and various federal officials including members of the United States Attorney's office, were apprised that an attempt had been made to contact a juror on Jones' behalf. Acting on this information, two Assistant United States Attorneys consulted with the Department of Justice and the Intelligence Division of the IRS. The use of electronic monitoring and recording devices in an attempt to gain information and evidence in this matter was approved by the Attorney General and consented to by the juror who had been the subject of the contact. The use of this equipment began immediately.

On Tuesday, July 18, 1972, the district court brought the fact of the attempted contact to the attention of all parties. Later that same day, the United States Attorney requested a conference in chambers at which time he revealed the existence of the electronic surveillance with the juror's consent. Upon hearing this information, the district court declared a mistrial.

Subsequently, appellant Jones brought suit in federal court against the United States under the Federal Tort Claims Act and against the individual federal defendants under 42 U.S.C. §§ 1981, 1983, and 1985. A similar suit was brought in state court against the individual defendants only. Each of these actions for damages was based upon the contention that the surveillance activities brought about by the defendants' acts resulted in a mistrial and the denial of the right to a speedy trial to Jones. The state action was removed to the federal court and considered with the pending federal action. A motion to dismiss or in the alternative for summary judgment was filed by the defendant in response to the complaint. The motion was accompanied by a brief in support of the motion and lengthy affidavits from the defendants and from the persons involved in the alleged jury tampering incident. Appellant Jones contested the motion but did not file any supplementary affidavits. The memorandum and order dismissing these suits for failure to state a claim upon which relief could be granted was filed by the district court on July 9, 1975.[2]

█ Appellant initially contends that the district court erred in dismissing his claim for damages pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346(b). As a basis for this contention, appellant Jones asserts that Arkansas law affords a civil damage action for violations of the criminal jury tampering statute. We disagree.

█ The decision of the Arkansas Supreme Court in *Bizzell v. Booker*, 16 Ark. 308 (1855), does not create the civil damage remedy urged by appellant. At most, *Bizzell* can be read as providing some dictum in support of the general principle that many criminal wrongs have a corresponding civil remedy. This maxim has not been generally extended to the type of wrong alleged herein. *Cf. Ragsdale v. Watson*, 201 F.Supp. 495, 502–03 (W.D.Ark.1962); *Robinson v. Missouri Pacific Transportation Co.*, 85 F.Supp. 235, 238–39 (W.D.Ark.1949). In addition, there is no evidence to suggest any legislative intent to create a civil reme-

---

2. The claimed civil rights deprivations under sections other than section 1985(2) were either dismissed or abandoned prior to the dismissal by the district court which is presently before this court on appeal. *Jones v. United States, supra*, 401 F.Supp. at 170.

dy in such instances under the Arkansas statutory scheme. *See Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). The portion of the complaint based upon the Federal Tort Claims Act was properly dismissed.[3]

Appellant next argues that the dismissal of his claim brought under 42 U.S.C. § 1985(2) on the ground that he failed "to allege a racial or class-based animus" was improper. *Jones v. United States, supra,* 401 F.Supp. at 173. The district court in its opinion carefully analyzed the legislative history of section 1985 and the Civil Rights Acts in general and concluded that the racial or class-based discrimination rationale expressed by the Supreme Court in *Griffin v. Breckenridge,* 403 U.S. 88, 101–02, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), applies equally to all clauses of that statute. 401 F.Supp. at 174. *See Kerckhoff v. Kerckhoff,* 369 F.Supp. 1165 (E.D.Mo.1974); *Johnston v. National Broadcasting Co.,* 356 F.Supp. 904, 909 (E.D.N.Y.1973); *Kitchen v. Crawford,* 326 F.Supp. 1255 (N.D.Ga.1970), *aff'd,* 442 F.2d 1345 (5th Cir. 1971). *Cf. Action v. Gannon,* 450 F.2d 1227 (8th Cir. 1971). *But see Kelly v. Foreman,* 384 F.Supp. 1352 (S.D.Tex.1974). We affirm that holding.

Finally, appellant urges that he has stated a proper cause of action under the doctrine of *Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1970). The district court refused to grant jurisdiction in this action based upon *Bivens,* 401 F.Supp. at 174. We do not reach this substantive issue regarding the jurisdictional limitations of the *Bivens* decision. The factual record in the instant case indicates that the federal officers and employees involved herein were acting in good faith based upon reasonable grounds and within the scope of their inves-

tigative authority. Thus, they are shielded from this damage action by the doctrine of qualified immunity.[4] *See Scheuer v. Rhodes,* 416 U.S. 232, 247–48, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Apton v. Wilson,* 506 F.2d 83, 90–95 (D.C.Cir. 1974); *Burkhart v. Saxbe,* 397 F.Supp. 499, 502–03 (E.D.Pa. 1975). *See also Wood v. Strickland,* 420 U.S. 308, 313–22, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). *Cf. Imbler v. Pachtman,* 424 U.S. 409, 420–431, 96 S.Ct. 984, 990–96, 47 L.Ed.2d 128, 137–145 (1976); *Wilhelm v. Turner,* 431 F.2d 177, 180–83 (8th Cir. 1970).

In *Apton v. Wilson, supra,* the District of Columbia Court of Appeals addressed the issue of qualified immunity for Justice Department officials and employees who directed and participated in the arrest of demonstrators in violation of their constitutional rights. The court, after careful examination of the legal precedent, concluded that

> a qualified immunity, having the same general character as that contemplated by the Supreme Court in *Scheuer* [*v. Rhodes*], is available to the Justice Department defendants in the present action. Such an immunity appropriately allows vindication of the Fourth and Fifth Amendment rights at stake, while preserving for the officials involved a shield against liability that will allow vigorous, legitimate use of power.

506 F.2d at 92–93. Similarly, we find that the federal employees and officials in the instant case are entitled to assert this same qualified immunity as a defense for their actions taken in response to the information that a juror in an ongoing criminal case had been wrongfully contacted on the defendant's behalf.

In addition we find that a remand for further factual development of the record is

---

**3.** Appellees urge that the claim against the United States is further barred by the discretionary function exception to the Federal Tort Claims Act, 28 U.S.C. § 2680(a). We find it unnecessary to reach this issue.

**4.** The immunity issue was not addressed by the district court. However, the doctrine of immunity was raised by the appellees in their brief in

support of the motion to dismiss or for summary judgment. The judgment of the district court may be affirmed on "any ground consistent with the record, even if rejected or ignored in the lower court." *Tiedman v. Chicago, Milwaukee, St. Paul and Pacific RR,* 513 F.2d 1267, 1272 (8th Cir. 1975).

unnecessary here. Unlike the *Scheuer* and *Apton* cases, the extensive and uncontroverted affidavits submitted by the federal defendants to the district court in connection with their motion for dismissal or a summary judgment amply demonstrate requisite knowledge and good faith belief that they were acting lawfully to support a finding of qualified immunity. *See Scheuer v. Rhodes, supra,* 416 U.S. at 1693, 94 S.Ct. 1683, 40 L.Ed.2d 90; *Apton v. Wilson, supra,* 506 F.2d at 94–95. Those affidavits reveal that the federal officials involved had reliable information that a contact with a juror had been attempted. In response to that information, the officials instigated an investigation in the belief that since a mistrial was mandated by the very fact of that attempt, no additional prejudice could accrue to the defendant by pursuing such investigation.[5] Appellees acted within the scope of their authority with good faith and a reasonable belief that their conduct was lawful. Thus, they are entitled to the protection of the qualified immunity doctrine.

Affirmed.

---

**5.** We note that these individuals were primarily acting in an investigative role and thus were not necessarily subject to the doctrine of absolute immunity that cloaks a prosecutor's actions taken within "the judicial phase of the criminal process." *Imbler v. Pachtman, supra,* 96 S.Ct. at 995 & n. 33. *See Wilhelm v. Turner, supra,* 431 F.2d at 180–83.