**Robert Vernon BRUCE, Appellant,**

v.

**UNITED STATES of America, the General Services Administration and Ralph W. McCann, Appellees.**

**No. 79–1369.**

United States Court of Appeals, Eighth Circuit.

Submitted May 7, 1980.

Decided May 13, 1980.

Robert Vernon Bruce, pro se.

Robert D. Kingsland, U. S. Atty., and Wesley D. Wedemeyer, Asst. U. S. Atty., St. Louis, Mo., for appellee.

Before HEANEY, ROSS and McMILLI-AN, Circuit Judges.

HEANEY, Circuit Judge.

Robert Vernon Bruce, proceeding *pro se*, brought this action seeking damages for the allegedly illegal release of his military personnel and medical records to the Criminal District Court of Dallas County, Texas. The district court[1] dismissed the complaint for lack of jurisdiction and failure to state a claim. We affirm.

In 1965, Bruce was tried and convicted in Texas state courts for the murder of his wife. In 1976, following protracted litigation in both state and federal courts, the United States Court of Appeals for the Fifth Circuit set aside the conviction on the ground Bruce was not competent at the time of trial and granted his petition for a writ of habeas corpus subject to the state's right to retry him for the offense. *Bruce v. Estelle*, 536 F.2d 1051 (5th Cir. 1976), *cert. denied*, 429 U.S. 1053, 97 S.Ct. 767, 50 L.Ed.2d 770 (1977). Bruce was retried in March, 1977, and again convicted of murder. He was sentenced to life imprisonment and is presently incarcerated in the Texas Department of Corrections at Huntsville, Texas.

In the course of the second trial, Bruce's United States Marine Corps personnel and medical records were subpoenaed from the National Personnel Records Center (NPRC) of the General Services Administration (GSA), located in St. Louis, Missouri. In his present complaint, Bruce contends that the release of his military records pursuant to the subpoena, without notice to him and without his consent, was tortious and illegal and that he was damaged by the use of the records by the prosecution at his trial. Named as defendants are the United States, GSA and Ralph W. McCann, Chief, Navy Reference Branch, NPRC. The district court dismissed the complaint, rejecting all the alternative bases of subject matter jurisdiction Bruce asserted for his claim. Only one of these requires any extended discussion.

The district court held that Bruce's complaint failed to state a claim under 5

---

1. The Honorable John F. Nangle, United States District Judge for the Eastern District of Missouri.

U.S.C. § 552a (the Privacy Act) and 28 U.S.C. § 1331. Subject to certain exceptions, § 552a(b) prohibits disclosure by federal agencies of records maintained about an individual without the prior written consent of that individual. Section 552a(g)(1)(D) provides that any individual who suffers an "adverse effect" because of agency failure to comply with § 552a(b) may bring a civil action against the agency,[2] with jurisdiction in the United States district courts.

The district court ruled that the disclosure in this case fell within one of the specific exceptions to § 552a(b)'s consent requirement. In pertinent part, § 552a provides:

> (b) Conditions of disclosure—No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, unless disclosure of the record would be—
>
> \* \* \* \* \* \*

**2.** We emphasize that the Act provides for civil remedies only against the *agency*, not individuals. 5 U.S.C. § 552a(g)(1); *Rowe v. Tennessee*, 431 F.Supp. 1257, 1264 (D.Tenn.1977), *vacated on other grounds*, 609 F.2d 259 (6th Cir. 1979). Individuals are subject only to criminal penalties. 5 U.S.C. § 552a(i)(1). Accordingly, Ralph W. McCann is not a proper defendant in a civil action for damages under the Act.

**3.** In relevant part, the court reasoned:

> Defendant also argues that the exception permitting disclosure of a record "pursuant to the order of a court of competent jurisdiction" is applicable in the instant action. 5 U.S.C. § 552a(b)(11). It asserts that the subpoena issued here is such an order of the court. Again, however, the court must disagree. Section 552a(b)(11) provides for those cases in which, for compelling reasons, the court *specifically* directs that a record be disclosed. Mere issuance in discovery proceedings of a subpoena—which is always subject to the power of the court to quash or limit—does not meet this standard. *See United States v. Brown*, 562 F.2d 1144, 1152 (9th Cir. 1978). To so hold would permit precisely the type of privacy invasions the Act sought to prevent.

(11) pursuant to the order of a court of competent jurisdiction.

Because Bruce alleged on the face of his complaint that his records were released pursuant to subpoena, a copy of which was made part of the district court record, the court held the disclosure was authorized as pursuant to an order of a court of competent jurisdiction and that Bruce failed to state a claim for violation of 5 U.S.C. § 552a.

At least one court has concluded that a subpoena is not an "order of a court" within the meaning of exception 11, holding that the provision requires a specific court order directing disclosure. *Stiles v. Atlanta Gas Light Company*, 453 F.Supp. 798, 800 (N.D. Ga.1978).[3] There is nothing in the legislative history of the Privacy Act of 1974 to suggest what Congress intended by the term.[4] We find it unnecessary to reach the question in this case. For purposes of this appeal only, we assume, but do not decide, that the subpoena was not an "order of a court" within the meaning of exception 11.[5]

> In view of the foregoing, it is clear that the Privacy Act will prevent disclosure in this case of the subpoenaed documents unless the court specifically orders them produced pursuant to section 552a(b)(11).

453 F.Supp. at 800 (emphasis in original).

**4.** The present exception 11 was not included in either the Senate or House Bills and is, therefore, not discussed in the Senate and House Reports. There was no Conference Report. *See* S.Rep.No. 93–1183, accompanying S. 3418, 93d Cong., 2d Sess., *reprinted in* [1974] U.S. Code Cong. & Admin.News, p. 6916; H.R. Rep.No. 93–1416, accompanying H.R. 16373, 93d Cong., 2d Sess. (1974). The first reference to the provision in congressional debate is in a recitation of the House bill in the Senate on December 17, 1974. 120 Cong.Rec. S 40,398 (1974). However, there is no discussion of the provision either on that date or in subsequent debates on the House and Senate Bills.

**5.** The subpoena in this case was issued by the Clerk of the Criminal District Courts of Dallas County, apparently at the request of the state prosecutor. Although the subpoena ordered release of the records directly to the presiding judge, there was no affirmative order of disclosure on the part of the court or other prior judicial approval.

We nevertheless agree that Bruce is entitled to no relief under the Privacy Act.

■ Section 552a(g) defines the civil remedies available under the Act. The United States is liable for damages for the type of violation here alleged only when the agency "acted in a manner which was intentional or willful." [6] 5 U.S.C. § 552a(g)(4). *See Cell Associates, Inc. v. National Institutes, Etc.*, 579 F.2d 1155, 1158–1159 (9th Cir. 1978). The records in this case were released in April, 1977, more than a year before *Stiles v. Atlanta Gas Light Company, supra,* was decided. The then existing

Department of Defense (DOD) and GSA regulations suggested that release of records pursuant to subpoena was proper.[7] There were at that time *no regulations or other authority to the contrary.*[8] In an effort to comply with existing authority, the GSA in this case specifically requested a subpoena prior to releasing the records. Under these circumstances, GSA's decision to release the records pursuant to the subpoena clearly cannot be considered to be a willful or intentional violation of the Act. Accordingly, Bruce's claim for damages under the Privacy Act must fail.[9]

6. The legislative history reveals this standard for recovery of damages reflected a compromise between the original House and Senate versions.

The standard for recovery of damages under the House bill was a determination by a court that the agency acted in a manner which was willful, arbitrary, or capricious. The Senate bill would have permitted recovery against an agency on a finding that the agency had erred in handling his records. These amendments represent a compromise between the two positions. They permit an individual to seek injunctive relief to correct or amend a record maintained by an agency. In a suit for damages, the amendment reflects a belief that a finding of willful, arbitrary, or capricious action is too harsh a standard of proof for an individual to exercise the rights granted by this legislation. Thus the standard for recovery of damages was reduced to "willful or intentional" action by an agency. *On a continuum between negligence and the very high standard of willful, arbitrary, or capricious conduct, this standard is viewed as only somewhat greater than gross negligence.*
Analysis of House and Senate Compromise Amendments to the Federal Privacy Act, *reprinted in* 120 Cong.Rec. S 40405, 40406 (1974) and in 120 Cong.Rec. H. 40881, 40882 (1974) (emphasis added).

7. 5 U.S.C. § 552a(*l*)(1) requires the GSA to comply with the regulations regarding disclosure of the federal agency which deposited the records with GSA, in this case the DOD, to the extent such regulations are not inconsistent with the Act.

The rules promulgated by the DOD under the Act indicate that the Department equates a subpoena with an order of a court.
[Records may not be disclosed without prior written consent unless disclosure will be]
\* \* \* \* \* \*
(11) Pursuant to the order of a court of competent jurisdiction.

(i) When a record is disclosed under compulsory legal process and when the issuance of that *order or subpoena* is made public by the court which issued it, make reasonable efforts to notify the individual to whom the record pertains.
32 C.F.R. § 286a.8(b) (emphasis added).
In addition, GSA's own regulations in effect at the time of release in this case provided that records could be released to a state or county court for use in a criminal prosecution "upon receipt of a proper court order or subpoena," subject to certain exceptions not applicable in the present case. General Services Administration, Release and Access Guide for Military Personnel and Related Records at the National Personnel Records Center, NPRC 1865.16 (Dec. 29, 1972).

8. The present Office of Management and Budget (OMB) guidelines for the use of federal agencies in implementing the Privacy Act merely repeat the language of exception 11 without elaboration. Office of Management and Budget, Privacy Act Implementation: Guidelines and Responsibilities, 40 Fed.Reg. 28948, 28955 (1975). The government advises, however, that OMB is in the process of developing a new guideline to implement the *Stiles* decision.

9. Although not necessary to our decision, we note that it is doubtful Bruce could prove the requisite "adverse effect" within the meaning of § 552a(g)(1)(D) from the alleged violation of the Act. Bruce alleges he was damaged by use of the records at trial. However, the record reveals that the records were not released by GSA until after the conclusion of his second trial. Trial was held March 28–30, 1977, and the records were released by GSA on April 1, 1977. Moreover, Bruce concedes that prior to his first trial in 1965, he consented to release of his military records to his defense attorneys, and that counsel subsequently turned the records over to the Dallas District Attorney. It is clear from the Fifth Circuit opinions that these

In addition to the Privacy Act, Bruce claimed his action for damages was authorized under several alternative statutory provisions. We agree with the district court that none of these provide a basis for subject matter jurisdiction. Jurisdiction may not be predicated on 28 U.S.C. § 1346(b) as a claim under the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.*, because Bruce failed to allege compliance with the administrative claim procedure set forth in 28 U.S.C. § 2675. Timely filing of an administrative claim is a jurisdictional prerequisite to suit under the Act. *West v. United States*, 592 F.2d 487, 492 (8th Cir. 1979); *Smith v. United States*, 588 F.2d 1209, 1211 (8th Cir. 1978); *Jones v. Wyeth Laboratories, Inc.*, 583 F.2d 1070 (8th Cir. 1978). The Trade Secrets Act, 18 U.S.C. § 1905, does not imply a private right of action. *Chrysler Corp. v. Brown*, 441 U.S. 281, 316, 99 S.Ct. 1705, 1725, 60 L.Ed.2d 208 (1979). It is now well established that the Administrative Procedure Act, 5 U.S.C. § 702, does not provide an independent basis for subject matter jurisdiction. *Califano v. Sanders*, 430 U.S. 99, 105–107, 97 S.Ct. 980, 984–985, 51 L.Ed.2d 192 (1977); *Werner v. United States Depart. of Interior, Fish and Wildlife*, 581 F.2d 168, 171 (8th Cir. 1978). Finally, Bruce's claim that the release of his records was somehow self-incriminating and in derogation of his constitutional rights under the Fifth Amendment is plainly frivolous.

Affirmed.

records were available to the state during protracted litigation resulting in the reversal of Bruce's original conviction. *See Bruce v. Estelle*, 536 F.2d 1051, 1053 (5th Cir. 1976), *cert. denied*, 429 U.S. 1053, 97 S.Ct. 767, 50 L.Ed.2d 770 (1977); *Bruce v. Estelle*, 483 F.2d 1031, 1036 (5th Cir. 1973).