**Gerald C. WISDOM, Appellant,**

v.

**DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, Donald C. Alexander, Director of IRS, William E. Simon, Secretary of Treasury, Charles Casey, J. Leo Langston, Jr., G. William Miller and Jerome Kirtz, Appellees.**

No. 82-1981.

United States Court of Appeals, Eighth Circuit.

Submitted April 14, 1983.

Decided Aug. 10, 1983.

Thurman Ragar, Jr., Pine Bluff, Ark., for appellant.

George W. Proctor, U.S. Atty., Diane S. Mackey, Asst. U.S. Atty., Little Rock, Ark., for appellees.

Before LAY, Chief Judge, McMILLIAN and JOHN R. GIBSON, Circuit Judges.

McMILLIAN, Circuit Judge.

Plaintiff-appellant Gerald Wisdom, a former employee of the Internal Revenue Service (IRS), brought this action against two former IRS supervisors and the Department of Housing and Urban Development (HUD). He asserted that his former supervisors violated 42 U.S.C. § 1985(1) when they conspired to force him to resign. He further alleged that HUD violated his due process rights when it used funds in his retirement account to pay off a defaulted loan and that HUD violated the Privacy Act when it released information on the

defaulted loan to Wisdom's employer. The district court[1] granted motions for summary judgment in favor of Casey and Langston on the § 1985(1) claim and HUD on the due process claim. After trial, the district court found for HUD on the Privacy Act claim. For the reasons discussed below, we affirm the district court's judgment in favor of HUD on the Privacy Act claim and the due process claim; we reverse the summary judgment in favor of Casey and Langston on the § 1985(1) claim and remand for further proceedings.

Wisdom was employed by the IRS as a revenue collector in Pine Bluff, Arkansas. In the mid-1970's Wisdom began having financial difficulties. His superiors at the IRS office gave advice and helped Wisdom set up a payment schedule to pay off all his debts.

In 1973, Wisdom borrowed $5,000 from the Texarkana Oaklawn Bank. The loan was guaranteed by HUD. In 1976, Wisdom defaulted on the loan, and HUD paid it off. On August 3, 1976, a HUD official sent a letter to Langston, the IRS Chief of Personnel in Little Rock, concerning Wisdom's default. Langston discussed the letter with Casey, an IRS group manager, and the two met with Wisdom on August 6. During the meeting Wisdom offered his resignation, and HUD initiated statutory "setoff" proceedings to recover the loan amount from Wisdom's retirement account, which became available for that purpose on Wisdom's resignation. Wisdom was not given a hearing before the setoff was allowed.

Wisdom filed a complaint against HUD, Langston, and Casey, alleging that HUD violated the Privacy Act when it notified Langston of the defaulted loan, that Langston and Casey conspired to force his resignation in violation of 42 U.S.C. § 1985(1), and that HUD violated his due process rights when it deprived him of funds in his retirement account without a predepriva-

tion hearing. We will consider each argument in turn.

## I. Privacy Act

The Privacy Act prohibits disclosure of any records on an individual without the individual's consent. 5 U.S.C. § 552a(b). There are exceptions, but none apply in this case. However, a violation of the Act alone is not enough for Wisdom to recover damages; he must show that the violation had an adverse impact on him, id. § 552a(g)(1)(D), and that the agency acted intentionally or willfully. Id. § 552a(g)(4).

The district court relied on Bruce v. United States, 621 F.2d 914 (8th Cir.1980), to find that HUD's violation was not willful. In Bruce, this court held that where records were released in accordance with regulations the validity of which had not been questioned, there was no "intentional" violation of the Privacy Act. 621 F.2d at 617.

In this case HUD released the information to the IRS in compliance with the guidelines under the Title I Collection Handbook, which implemented the Federal Claims Collection Act, 31 U.S.C. § 3701.[2] Nothing in the record indicates that the Handbook's guidelines have been questioned or challenged. However, Wisdom contends that HUD's failure to revise the Handbook in light of the Privacy Act diminishes the deference due to HUD's use of the Handbook. To a certain extent we agree. HUD certainly could not ignore the dictates of the Privacy Act in promulgating regulations, and the Act does require that agencies establish procedures guaranteeing confidentiality and accuracy of records. 5 U.S.C. § 552a(e). Thus, in some circumstances, the existence of regulations may not shield an agency from liability. However, here we do not consider that HUD's continued reliance on its Collection Handbook can be characterized as a willful violation of the Act. The Privacy Act was still

---

1. The Honorable Oren Harris, United States Senior District Judge for the Eastern District of Arkansas.

2. At the time of the collection activities, this Act was codified at 31 U.S.C. § 951 et seq. Extensive changes have since been made in the Act. Pub.L. No. 97–452, 96 Stat. 2470, 2474 (1983).

relatively recently enacted and its ramifications not perfectly clear; the particular provision at issue here had not been challenged; nor can it be characterized as so patently egregious and unlawful that anyone applying them should have known they were unlawful. Therefore, we conclude that the district court did not err in applying *Bruce* to this case.

## II. Due Process

Wisdom alleges that HUD's failure to provide him with a hearing before it applied funds in his retirement account to pay off his defaulted loan violated his right to due process. He relies on *Sniadach v. Family Finance Corp.,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), and other cases involving seizure by creditors of the property of debtors.

■ Clearly due process does not mandate a prior hearing in this case. The deprivation was of property neither then available to Wisdom nor being used by him for necessities of life. *Cf. Atwater v. Roudebush,* 452 F.Supp. 622, 631 (N.D.Ill.1976). Thus, even if the deprivation in this case had been wrongful, no harm would have resulted from a postdeprivation hearing rather than before. *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Finally, Wisdom neither disputes the amount of the debt nor that he owes it. Thus, no facts exist which, if shown, would have prevented setoff. *See Codd v. Velger,* 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977).

Wisdom asserts that he was harmed by the absence of a presetoff hearing because he was given no chance to set up a payment schedule with the government.[3] There is no constitutional requirement that debtors be allowed to negotiate settlements on debts owed to the government.

## III. Section 1985(1)

Section 1985(1)[4] prohibits conspiracy to prevent a federal officer from performing his duty. 42 U.S.C. § 1985(1). Wisdom alleged that when Casey and Langston met with him after receiving the letter from HUD, they coerced him into resigning in violation of that section. The district court dismissed on the basis that Wisdom had alleged no racial or class-based discrimination; the court relied on *Jones v. United States,* 536 F.2d 269 (8th Cir.1976), *cert. denied,* 429 U.S. 1039, 97 S.Ct. 735, 50 L.Ed.2d 750 (1977), in which this court held in dictum that an allegation of racial or class-based discrimination is required to state a claim under any subsection of § 1985. 536 F.2d at 271. For the reasons discussed below, we reverse the dismissal of appellant's § 1985 claim.

*Jones* has been seriously undermined by the Supreme Court's recent decision in *Kush v. Rutledge,* —— U.S. ——, 103 S.Ct. 1483, 75 L.Ed.2d 413 (1983). The plaintiff in *Kush* filed suit under the first part of § 1985(2) which prohibits conspiracy to intimidate witnesses; there was no allegation of racial or class-based discriminatory animus. The Court held that an allegation of discriminatory animus was not required to state a cause of action under the first part of § 1985(2). *Id.* at 1488. The Court noted

3. When Congress amended the Federal Claims Collection Act in 1983, it added a provision requiring more extensive notice and granting other rights to a debtor whose property is taken by administrative setoff. 31 U.S.C. § 3716; *see* note 2 *supra.*

4. Section 1985 provides in pertinent part:
 (1) If two or more persons in any State or Territory conspire to prevent, by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof; or to induce by like means any officer of the United States to leave any State, district, or place, where his duties as an officer are required to be performed, or to injure him in his person or property on account of his lawful discharge of the duties of his office, or while engaged in the lawful discharge thereof, or to injure his property so as to molest, interrupt, hinder, or impede him in the discharge of his official duties; ... the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

that § 1985 proscribes five kinds of conspiracies that interfere with:

(a) the performance of official duties by federal officers; (b) the administration of justice in federal courts; (c) the administration of justice in state courts; (d) the private enjoyment of "equal protection of the laws" and "equal privileges and immunities under the laws"; and (e) the right to support candidates in federal elections.

*Id.* at 1487. The Court went on to find

[t]hree of the five broad categories, the first two and the fifth, related to institutions and processes of the federal government—federal officers, § 1985(1); federal judicial proceedings, the first portion of § 1985(2); and federal elections, the second part of § 1985(3). The statutory provisions dealing with these categories of conspiratorial activity contain no language requiring that the conspirators act with intent to deprive their victims of the equal protection of the laws.

*Id.*

We consider *Kush* to apply to § 1985(1) as well as to the first part of § 1985(2) and believe that *Kush* has effectively overruled our decision in *Jones.* *Kush* specifically noted that § 1985(1) did not contain language requiring intent to deprive victims of equal protection rights; the absence of that language in the first part of § 1985(2) was deemed of "greatest importance" to the court's holding that class-based animus was not required to violate that provision. *Id.* at 1487–88. Thus, *Kush* mandates a holding that a cause of action under § 1985(1) does not require an allegation of racial or class-based discriminatory animus.

Defendant-appellees argue that even if *Kush* is interpreted to mean that an allegation of class-based animus is not required, there are other grounds for upholding the dismissal of Wisdom's § 1985(1) claim. Specifically, appellees claim that they are immune and that there is no allegation of interference with official duties. Appellees urge that because these are questions of law, this court should decide them

without remand. We consider it more appropriate for the district court to answer these questions first, after such further proceedings as the district court deems necessary.

Accordingly, the judgment of the district court is affirmed in part and reversed in part and remanded for further proceedings.