**John H. NIX, Plaintiff,**

v.

**Martin R. HOKE, et al., Defendants.**

**No. Civ.A. 98–3039(HHK).**

United States District Court, District of Columbia.

Aug. 17, 1999.

Theodore M. Cooperstein, Theodore M. Cooperstein, P.C., Washington, DC, for Plaintiff.

Geraldine R. Gennet, General Counsel, Kerry W. Kircher, Deputy General Counsel, Office of the General Counsel, U.S. House of Representatives, Washington, DC, for Defendant Mark R. Hoke.

Deborah J. Jeffrey, Zuckerman, Spaeder, Goldstein, Taylor & Kolker, Washington, DC, for Defendant Bernice Ferencz.

## MEMORANDUM OPINION

KENNEDY, District Judge.

Plaintiff, John H. Nix, has brought this action alleging that former United States Representative Martin Hoke and Nix's former neighbor, Bernice Ferencz[1], engaged in a conspiracy to interfere with proceedings in a federal trial in Ohio. Nix has brought RICO and tort claims against both defendants and *Bivens* claims against Hoke. Before the court are defendants' motion to strike the most recent amended complaint, Rep. Hoke's motion to dismiss the original complaint for failure to state a claim, Ferencz's motion to dismiss for lack of personal jurisdiction, and Ferencz's motion to supplement her motion to dismiss.

### I. Factual Background

Because Rep. Hoke and Ferencz have not yet answered any of the filed complaints, the court can review only the facts as alleged by Nix. In 1993, Nix became a friend and business partner of John R. Master, who was then a retired physician and longtime resident at 5800 Brookside Drive in Cleveland, Ohio.[2] In August 1993, Nix moved into Master's home to assist Master with personal and business affairs and to pursue the partnership's plans for developing a nearby tract of land. Other Brookside Drive residents opposed Nix's presence in the neighborhood and development plans, however, and met in December 1993 to discuss "how to get rid of John Nix." While Ferencz was not present at the meeting, she was aware of the meeting and was later apprised of the discussions at the meeting.

According to Nix, Patrick J. O'Malley, a member of the Cleveland city council, began a campaign of investigation and surveillance in an attempt to collect incriminating evidence on Nix. Specifically, O'Malley "caused" the Cleveland Police Department to investigate Nix. Later in February 1994, O'Malley and his friend Robert Roche wiretapped Nix's telephone and recorded Nix's personal and business conversations on tape. Among those aware that the wiretapping was taking place were Ferencz and Rep. Hoke. Hoke, then the U.S. representative for the part of Cleveland containing Brookside Drive, was a "close personal friend" of O'Malley. Nix further alleges that in late March 1994, Nix discovered the wiretapping and obtained copies of some of the tapes.

In April 1994, Nix filed a criminal complaint with the Federal Bureau of Investigation and a civil complaint in the United States District Court for the Northern District of Ohio. *See Master v. Sword*, Civ. No. 94–0849 (N.D.Ohio Apr. 22, 1994). The FBI assigned Nix's criminal complaint to Special Agent Richard Hoke, a relative of Rep. Hoke. During Richard Hoke's investigation, Rep. Hoke contacted him to assert that O'Malley had acted in his capacity as a city council member in recording Nix's telephone conversations because

---

1. Although Elcides Bruno Flores and four John Does appear as defendants in the caption of this case, the amended complaints filed on May 17, 1999 and June 8, 1999 contain no claims for judgment against the unnamed defendants. *See* Amended Compl. at 24–25; First Amended Compl. at 26–28. Moreover, the amended complaint filed on June 8, 1999 does not even list the unnamed defendants as parties. *See* First Amended Compl. at ¶ 4–6. Accordingly, Flores and the Doe defendants will be dismissed from this case.

2. According to Hoke, Dr. Master died in October 1995, and Nix became the sole beneficiary of his estate. Def. Hoke's Mot. Dismiss at 4.

"Nix was causing problems in the neighborhood." A few days later, Richard Hoke informed Nix that he had determined that someone had intercepted certain cordless telephone communications of Nix, but that no violation of federal law had occurred. According to Nix, Rep. Hoke also informed O'Malley, Ferencz, and the other Brookside Drive residents who were named as defendants in *Sword* that they "would either not have to testify regarding the wiretapping, or that if they were compelled to testify about the matter, that no harm would befall them if they denied knowledge of the wiretapping." *Id.* at ¶ 69.

In June 1994, Master filed a further civil action in the Cuyahoga County Court of Common Pleas. *See Master v. Chalko*, No. 272373 (June 15, 1994).

Nix contends that in March 1995, several Brookside Drive residents, including Ferencz, were subpoenaed to give depositions in the two cases. Rep. Hoke assisted several of the residents in their efforts to avoid testifying about the wiretapping. Specifically, at Ferencz's request, Rep. Hoke's office located an attorney to represent Ferencz and asked him to seek to quash the subpoena and file a protective order on her behalf. In March 1995, Rep. Hoke himself also filed a motion for a protective order with the district court in Sword; the court shortly thereafter stayed all discovery in the case until December 1996. On April 4, 1995, Rep. Hoke and O'Malley arranged for another Brookside Drive resident, Michael Dobronos, to travel to Hawaii on the morning of his scheduled deposition.

According to Nix, Rep. Hoke also advised Ferencz and other witnesses to testify falsely at the *Chalko* trial in November 1995. At the *Chalko* trial, several of the residents, including Ferencz, testified and denied any knowledge of the wiretapping. An aide to Rep. Hoke was present at the trial during this testimony.

On December 14, 1998, Nix filed a complaint *pro se* alleging that former Rep. Hoke, Ferencz, and various unnamed defendants engaged in an illegal wiretapping conspiracy in an effort to drive Nix out of his neighborhood and to thwart Nix's plans for developing a nearby tract of land. Nix has subsequently filed two amended complaints: one filed *pro se* on May 19, 1999 as Appendix D to Nix's motion for leave to amend under the title "Amended Complaint," and one filed by his counsel on June 8, 1999 under the title "First Amended Complaint." The June 8, 1999 complaint contains substantially the same factual allegations as the May 19, 1999 complaint, but with a revised set of claims. The claims in the June 8, 1999 complaint are: civil RICO claims against Hoke and Ferencz (Count 1); *Bivens* First, Fourth, Fifth, Sixth, and Seventh Amendment claims against Hoke in his official capacity (Counts 2–6); and intentional tort claims (Count 7); invasion of privacy claims (Count 8); and obstruction and interference with legal remedies claims (Count 9) against Hoke and Ferencz.

Before the court are Rep. Hoke's motion to strike the June 8, 1999 complaint, Rep. Hoke's motion to dismiss the original complaint for failure to state a claim, Ferencz's motion to dismiss for lack of personal jurisdiction, and Ferencz's motion to supplement her motion to dismiss.

## II. STANDARDS OF REVIEW

### A. Dismissal for Lack of Personal Jurisdiction

■ Prior to an evidentiary hearing or discovery, a plaintiff may defeat a motion to survive a motion to dismiss for lack of personal jurisdiction "by making mere factual allegations to establish a prima facie showing of jurisdiction." *GTE New Media Services Inc. v. Ameritech Corp.*, 21 F.Supp.2d 27, 36 (D.D.C.1998). Such allegations may not be bare conclusory statements, but must connect the defendant with the forum. *Id.*

### B. Dismissal for Failure to State a Claim

On a motion to dismiss, the court must take the allegations in the plaintiffs' plead-

ing as true and must construe them in a light most favorable to the plaintiffs. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Sinclair v. Kleindienst*, 711 F.2d 291, 293 (D.C.Cir.1983). Dismissal is appropriate only when it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley*, 355 U.S. at 45–46, 78 S.Ct. 99.

### III. DISCUSSION

#### A. Nix's Motion to Amend

■ Leave to amend under Rule 15(a) "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). The notice pleading framework of the Federal Rules does not require the pleading of legal theories. *Hanson v. Hoffmann*, 628 F.2d 42, 53 (D.C.Cir.1980). Thus, "[u]nless a defendant is prejudiced on the merits by a change in legal theory, a plaintiff is not bound by the legal theory on which he or she originally relied." *Id.*

■ The defendants concede that the May 19, 1999 complaint was filed as of right, but argue that Nix has no "right willy-nilly to withdraw one amended complaint filed as of right and replace it with another." Def.'s Reply to Pl.'s Opp to Def.'s Mot. to Strike Pl.'s "Second" Amended Complaint at 3. The defendants have not alleged bad faith on Nix's part or suggested that they will be prejudiced on the merits by Nix's change in legal theory. Significantly, Nix has not sought to allege new facts requiring additional discovery. *See Alley v. Resolution Trust Corp.*, 984 F.2d 1201, 1208 (D.C.Cir.1993). Accordingly, the court will deny the defendants' motion to strike and permit the filing of the June 8, 1999 complaint.

#### B. Ferencz's 12(b)(2) Motion to Dismiss

Ferencz asserts that any contacts she may have had with the District of Colum-

bia were "exercises of a citizen's first amendment right to petition the government for redress of grievances." Def. Ferencz's Mot. Dismiss at 5–6. It is uncontested that Ferencz's only contacts with the District of Columbia were "a handful of telephone calls and letters to Rep. Hoke's congressional office concerning matters before Congress." Def. Ferencz's Mot. Dismiss at 5 (citing Compl. ¶ 96); Pl.'s Opp. to Def. Ferencz's Mot. Dismiss at 5–7. Moreover, it is undisputed that any such contacts by Ferencz were requests for the exercise of "Defendant Hoke's powers as a public official in Washington, D.C." Pl.'s Opp. at 7; Def. Ferencz's Reply at 4.

■ Although Ferencz mischaracterizes the subjects of the alleged conversations as "matters before Congress,"[3] she correctly states the rule of law that personal jurisdiction in the District of Columbia may not be founded solely on contacts with the federal government. *See Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 786–87 (D.C.Cir.1983); *Mallinckrodt Medical, Inc. v. Sonus Pharmaceuticals*, 989 F.Supp. 265, 271 (D.D.C.1998); *Environmental Research Int'l., Inc. v. Lockwood Greene Engineers, Inc.*, 355 A.2d 808, 813 (D.C.1976) (en banc).

■ Under the "government contacts" exception to the District's long-arm statute, "a person or company does not subject itself to the jurisdiction of the courts of the District of Columbia merely by filing an application with a government agency, like the FDA, or by seeking redress of grievances from the Executive Branch or Congress." *Mallinckrodt*, 989 F.Supp. at 271. The source of the exception lies in "the unique character of the District as the seat of national government and in the correlative need for unfettered access to federal departments and agen-

---

**3.** Nix alleges that the purpose of the conversations was "to seek the assistance of Defendant Hoke relative to the wiretapping litigation," "to seek to avoid testifying about the wiretap-

ping," and "to request[ ] the assistance of Defendant Hoke in avoiding having to testify." Compl. ¶¶ 96–98.

cies for the entire national citizenry." *Environmental Research*, 355 A.2d at 813. "To permit our local courts to assert personal jurisdiction over nonresidents whose sole contact with the District consists of dealing with a federal instrumentality not only would pose a threat to free public participation in government, but also would threaten to convert the District of Columbia into a national judicial forum." *Id.* Insofar as any contacts Ferencz may have had with the District of Columbia were in the form of requests for the exercise of federal "powers" from a federal instrumentality, the "government contacts" exception to the District's long-arm statute operates to preclude this court's exercise of personal jurisdiction over her.

Nix also contends that the RICO statute provides an independent basis for personal jurisdiction over Ferencz. The court need not reach this issue, however, because as explained below, Nix has failed to state a RICO claim upon which relief against Rep. Hoke and Ferencz can be granted. *See Berg–Manufacturing & Sales Corp. v. Ivy/Mar Co.*, 1996 WL 596512, at *1 (N.D.Ill. Oct. 15, 1996) (dismissing RICO claim under 12(b)(6) before reaching questions of personal jurisdiction and venue); *Ogilvie v. Beale*, 1994 WL 33972, at *3 (N.D.Ill. Feb. 4, 1994) (same); *see also Mulhern v. West Coast Video Enters., Inc.*, 1992 WL 141990, at *4 (N.D.Ill. June 15, 1992) (applying Rule 12(b)(6) scrutiny to RICO claim before evaluating Rule 12(b)(2) motion); *Smith v. Mark Twain Bancshares*, 1986 U.S.Dist. LEXIS 21658, at *3 (D.Kan. Aug. 11, 1986) (same). Accordingly, Ferencz's motion to dismiss for lack of personal jurisdiction will be granted.

## C. Rep. Hoke's 12(b)(6) Motion to Dismiss and Ferencz's Motion to Supplement

█ Although Rep. Hoke's motion to dismiss was addressed to the original complaint, the court may consider it in reviewing the amended complaint to the extent that defects remain. *See, e.g., Clarry v.*

*United States*, 85 F.3d 1041, 1045 (2nd Cir.1996) (affirming district court's dismissal of both original complaint and amended complaint on defendant's motion to dismiss); *Datastorm Technologies, Inc. v. Excalibur Communications, Inc.*, 888 F.Supp. 112, 114 (N.D.Cal.1995) (considering motion to dismiss the original complaint as directed to the amended complaint where the amendment merely added a party and did not affect the defects upon which the motion was based); *Fitzgerald v. Arizona*, 1997 WL 579193, at *3 (D.Ariz. July 9, 1997) ("the Court may exercise its discretion to consider a motion to dismiss the original complaint where the amended complaint fails to cure the defects of the original complaint.").

Ferencz has also moved to supplement her motion to dismiss by incorporating the substance of Rep. Hoke's Rule 12(b)(6) motion, correctly noting that "many of the defects in the complaint identified by Mr. Hoke ... apply with equal force to Miss Ferencz." Def. Ferencz's Mot. Supp. Mot. Dismiss at 2. Nix did not oppose this motion. Accordingly, the court will permit Ferencz to expand the grounds for her motion to dismiss under Rule 12 by granting her motion to supplement. *See MacNeil v. Whittemore*, 254 F.2d 820 (2nd Cir.1958).

### 1. The Civil RICO Claim

The Racketeer-influenced and Corrupt Organizations Act ("RICO") confers a private right of action on "any person injured in his business or property by reason of a violation of section 1962...." 18 U.S.C. § 1964(c).

█ To recover under § 1964(c), a private plaintiff must show that the proximate cause of his injury is the defendant's conduct. *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992). Proximate cause may be found in the RICO context if the alleged violation of § 1962 is " 'a substantial factor in the sequence of responsible causation.' " *Cox v. Adm'r*

*United States Steel & Carnegie,* 17 F.3d 1386, 1399, *modified on reh'g,* 30 F.3d 1347 (11th Cir.1994), *cert. denied,* 513 U.S. 1110, 115 S.Ct. 900, 130 L.Ed.2d 784 (1995) (quoting *Hecht v. Commerce Clearing House, Inc.,* 897 F.2d 21, 23–24 (2nd Cir. 1990)).

Moreover, courts have consistently read § 1964(c) to require that the plaintiff's injury be sustained to business or property. *See Doe v. Roe,* 958 F.2d 763, 767 (7th Cir.1992) ("The terms 'business or property' [in § 1964(c)] are ... words of limitation which preclude recovery for personal injuries and the pecuniary losses incurred therefrom."); *Oscar v. University Students Co-op. Association,* 965 F.2d 783 (9th Cir.1992); *Genty v. Resolution Trust Corp.,* 937 F.2d 899, 918 (3d Cir.1991); *Rylewicz v. Beaton Services, Ltd.,* 888 F.2d 1175, 1180 (7th Cir.1989).

Nix has identified as the factual predicates for his civil RICO claim the following alleged acts by the defendants: (1) phone calls to Richard Hoke to influence the FBI investigation into the wiretapping of Nix; (2) a phone call from Arlene Hill, a witness in *Chalko* and *Sword;* (3) the mailing of invitations to a reelection campaign fundraiser; (4) phone calls between Ferencz and Rep. Hoke "in furtherance of the aforementioned enterprise"; and (5) communications to retain the services of attorney Bagley for the benefit of Ferencz "and in furtherance of their enterprise." See Amended Compl. ¶ 139. Regarding the substance of the phone call to Richard Hoke, Nix alleges only that Rep. Hoke said that "O'Malley had intercepted and recorded Nix's telephone conversations because Nix was causing problems in the neighborhood, and that Rep. Hoke had reason to believe that O'Malley was working in his capacity as a City of Cleveland councilman in conjunction with the Cleveland Police Department in investigating John Nix." Amended Compl. ¶ 56–57. Nix's only contention regarding the substance of the phone call from Arlene Hill is that "Hill ... discussed with Rep. Hoke John Nix's wiretapping litigation and her concern that she and other Brookside Drive residents might be compelled to testify about the wiretapping, and to reveal O'Malley's involvement therein." Amended Compl. ¶ 73. Nix's explanation of how he was injured in his "property or business" by these actions is that "[a]ll monies derived from [*Chalko*] in which Defendant Ferencz was testifying ... would have belonged to plaintiff" and that "[t]he giving of false testimony in that case ... affected the outcome of the case." Pl.'s Br. Opp. Mot. Dismiss at 14.

The factual allegations against the defendants, when viewed apart from the bare legal conclusions that they were undertaken "in furtherance of an enterprise" and "constituted a scheme or artifice to defraud John Nix," are facially insufficient to support a finding of any illegality, let alone "a pattern of racketeering activity" or "collection of an unlawful debt" in violation of § 1962. Neither has plaintiff offered an explanation of how any of the defendants' actions were "substantial factors in the sequence of responsible causation" of the outcome in *Chalko.* Furthermore, the judgment sought by Nix in *Chalko* was not, and is not, plaintiff's "property" within the meaning of § 1964(c). To allow a private RICO plaintiff to go forward on the theory that a judgment sought in litigation is already his "property" would "allow all factually injured plaintiffs to recover" under the statute, a result the Supreme Court has expressly rejected. *See Holmes,* 503 U.S at 266, 112 S.Ct. 1311. Accordingly, Rep. Hoke's motion to dismiss the RICO claim will be granted as to both defendants Hoke and Ferencz.

## 2. The *Bivens* Claims

Counts 2–6 of Nix's complaint are premised on the doctrine promulgated in *Bivens v. Six Unknown Federal Narcotic Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). To succeed on a *Bivens* cause of action, a plaintiff must show

that the defendant violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Moreover, where, as here, a plaintiff in a *Bivens* claim alleges an unconstitutional motive, "[t]he allegations of facts must be specific and concrete enough to enable the defendants to prepare a response, and where appropriate, a motion for summary judgment based on qualified immunity." *Whitacre v. Davey*, 890 F.2d 1168, 1171 (citing *Martin v. Malhoyt*, 830 F.2d 237, 254 (D.C.Cir.1987)).

Nix's "specific and concrete" factual allegations regarding Rep. Hoke's role in the wiretapping of Nix's telephone communications are first, that during the FBI investigation, Rep. Hoke asserted to Richard Hoke that he believed O'Malley had acted in his capacity as a city council member in recording Nix's telephone conversations because "Nix was causing problems in the neighborhood," Amended Compl. ¶ 57; second, that Rep. Hoke aided the *Sword* and *Chalko* defendants' efforts to avoid testifying or to testify falsely regarding the wiretapping. *Id.* ¶¶ 67, 99, 104, 105, 110–12, 120, 124, 125, 129.

 The court finds nothing in Rep. Hoke's statement to Richard Hoke to suggest the violation of a "clearly established statutory or constitutional right of which a reasonable person would have known"; indeed, Rep. Hoke's statement is likely entitled to the full protection of the First Amendment. To the extent that the second allegation pertains to a claimed violation of Nix's constitutional right to a fair trial of his claims, the *Bivens* doctrine has never been read to extend so far. *See Jones v. United States*, 401 F.Supp. 168, 174 (E.D.Ark.1975), *aff'd*, 536 F.2d 269 (8th Cir.1976), *cert. denied*, 429 U.S. 1039, 97 S.Ct. 735, 50 L.Ed.2d 750 (1977). In *Jones*, the plaintiff sought a *Bivens* remedy for alleged prosecutorial jury tampering in violation of his right to a just and speedy trial guaranteed by the Fourth,

Sixth, and Fourteenth Amendments. *Id.* at 169. Noting that "a federal judge's contempt power is more than adequate to deter any intentional jury tampering activity on the part of federal officials," the court concluded that "the *Bivens* doctrine should not be extended to grant jurisdiction in an action for damages from a federal officer's alleged attempts to prevent an individual from receiving a just and speedy trial." *Id.* at 174–75. This court will therefore decline to create a private cause of action in *Bivens* where, as here, contempt sanctions are more than adequate to deter the alleged trial misconduct.

### 3. Service of Process

Rep. Hoke has also moved to dismiss all claims asserted against him in his official capacity for insufficiency of service under Federal Rule 4(i). That rule requires that service on an officer of the United States be effected by serving the United States Attorney for the district in which the action is brought, as well as the Attorney General. Fed.R.Civ.P. 4(i)(1). If a plaintiff fails to effectuate service of process upon these parties within 120 days, the court "shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified period of time." Fed.R.Civ.P. 4(m).

 It is undisputed that Nix has not yet served either the United States Attorney and the Attorney General. In cases involving *pro se* litigants, however, this court applies a lenient construction of the service requirements where the government has received actual notice of the suit. *See Huskey v. Quinlan*, 785 F.Supp. 4, 6 (D.D.C.1992). Nix's first complaint filed by counsel was docketed on June 8, 1999. Accordingly, Nix has 120 days from that date; i.e., until October 6, 1999, to correct the defect in service.

### 4. The Tort Claims

Nix's claims for intentional tort, invasion of privacy, and obstruction and interfer-

ence with legal remedies first appear in his June 8, 1999 complaint, and therefore have not been addressed in Rep. Hoke's motion to dismiss. In the event that the court denies the motion to strike, Rep. Hoke has requested 45 days from the date of the court's order for the defendants to answer the June 8, 1999 complaint and respond to the new claims. The court will grant this request.

### IV. CONCLUSION

For the foregoing reasons, it is this 17th day of August, 1999, hereby

**ORDERED** that the defendants' motion to strike the "First Amended Complaint" filed June 8, 1999 is **DENIED;** and it is further

**ORDERED** that defendant Ferencz's motion to supplement her motion to dismiss is **GRANTED;** and it is further

**ORDERED** that defendant Ferencz's motion to dismiss for lack of personal jurisdiction is **GRANTED;** and it is further

**ORDERED** that defendant Hoke's motion to dismiss for failure to state a claim is **GRANTED** as to counts 1–6 of the First Amended Complaint; and it is further

**ORDERED** that defendant Hoke shall have 45 days from the date of this order to answer the June 8, 1999 complaint and respond to the remaining claims; and it is further

**ORDERED** that plaintiff shall have until October 6, 1999 to correct the defects in service respecting the remaining claims against defendant Hoke in his official capacity; and it is further

**ORDERED** that defendant Elcides Bruno Flores and the unnamed defendants are dismissed from this case, as no claims have been asserted against them in the First Amended Complaint.