**Lavern YODER, Jr., Plaintiff,**

v.

**INGERSOLL–RAND COMPANY d/b/a Ingersoll–Rand/ARO Corporation, Defendant.**

No. 3:96 CV 7239.

United States District Court, N.D. Ohio, Western Division.

June 4, 1997.

Mark Paul Prajsner, Toledo, OH, for Avern Yoder, Jr., plaintiff.

Jennifer J. Dawson, Justice G. Johnson, Jr., Roman Arce, Marshall & Melhorn, Toledo, OH, for Ingersoll–Rand Company dba Ingersoll–Rand/ARO Corporation, defendants.

## MEMORANDUM OPINION

KATZ, District Judge.

This matter is before the Court on cross motions for summary judgment. For the following reasons, Plaintiff's motion for summary judgment will be denied. Defendant's motion for summary judgment will be granted.

## I. BACKGROUND

Plaintiff Lavern Yoder brings this action against his employer to recover for damages he alleged were caused as a result of Defendant's failure to keep his medical records confidential. The dispositive facts are not in dispute. Defendant Ingersoll–Rand Company is a Delaware Corporation doing business in the state of Ohio as the Aro Corporation. At all times relevant to this action, Plaintiff Lavern Yoder was employed by Defendant as a tow motor driver at Defendant's Bryan, Ohio facility. Plaintiff's mother, Judy Bowers, was also employed by Defendant.

Around November 1993, Plaintiff learned that he was HIV-positive. During the last six months of 1994, Plaintiff took two medical leaves of absence to be treated for Kaposi's Sarcoma, a rare form of cancer which affects people with AIDS. Plaintiff made every effort to keep his HIV-positive status confidential from his employer, because he was concerned that he might suffer adverse employment consequences should his employer learn of his condition.

In August 1995, Plaintiff's doctor recommended that he take a medical leave of absence because of stress-induced asthma. When an employee seeks a disability leave, the employee is given a two-sided form entitled "Disability Benefit Request" on one side and "Physician's Statement" on the other. The employee fills out the "Disability Benefit Request" side of the form, and then submits the form to his physician to fill out the "Physician's Statement" side. Customarily, Aro gives the employee, along with the form, an envelope for the physician to place the form in after it is completed. The envelope is addressed to Aro, and marked "Personal and Confidential; Attention M. Sullivan." Mary Sullivan is the Aro hourly benefits coordinator. The employee then either hand-delivers the disability benefit request form to Sullivan, or can have it mailed to Sullivan in the Aro envelope.

In late August, 1995, Plaintiff obtained a Disability Benefit Request form from Sullivan, completed the Disability Benefit Request side of the form, and then hand-delivered the form to Dr. Haig Donabedian for completion. On August 29, 1995, Dr. Donabedian partially completed the "Physician's Statement" side of the form and returned it to Sullivan. The Physician's Statement indicated diagnoses of HIV-positive/AIDS, Kaposi's Sarcoma, and SIP skin graft. This appears to be the first time that Aro had a document indicating Plaintiff's AIDS diagnosis.

Dr. Donabedian did not complete the sections of the form entitled "Date of total disability" and "Date patient able to return to work." Since Sullivan could not process the form without Plaintiff's dates of disability, she returned the form to Plaintiff to give to Dr. Donabedian for completion. The parties disagree as to whether Sullivan gave Plaintiff the standard "Personal and Confidential; Attention M. Sullivan" return envelope along with the form; Sullivan states that she gave Plaintiff the envelope; Plaintiff states that he was given only a blank envelope with Aro's return address on it. At any rate, Plaintiff sent the form to Dr. Donabedian in a blank envelope with Aro's return address on the outside. The envelope was not marked "Per-

sonal and Confidential," and Plaintiff did not place either his name or Sullivan's on the outside of the envelope.

For reasons unknown to the parties, the envelope was returned to Aro undelivered, marked "RETURN TO SENDER, NO LONGER HERE." Any mail that is addressed only to Aro, with no individual name listed on the envelope, is opened by the mail clerk in the Aro mail room. Aro mail clerk Deloris Kornrumpf opened the envelope in order to determine where it should be routed, and read enough of its contents to find Plaintiff's name. Kornrumpf did not read the document further. She replaced the Disability Benefit Request form in the envelope, placed that envelope in a large goldenrod interoffice envelope, put Plaintiff's name on the interoffice envelope, and routed it to Plaintiff via his supervisor.

Plaintiff was not at work on the day that Plaintiff's supervisor, Ray Chroninger, received the interoffice envelope. Chroninger noticed that the inner envelope was addressed to the Medical College of Ohio, and thought it might contain urgent information. Since Plaintiff was not at work, Chroninger gave the envelope to Plaintiff's mother to give to him. Chroninger did not open the inner envelope.

Later that day, Plaintiff's mother opened the envelope and read its contents. She learned from the Physician's Statement that Plaintiff had AIDS. Immediately before she opened the envelope, Plaintiff's mother had known that Plaintiff was HIV-positive and had been treated for Kaposi's Sarcoma, but did not know that Plaintiff had AIDS.

Plaintiff has brought a six-count Complaint against Defendant for permitting the unauthorized disclosure of his medical condition. In Count I, Plaintiff alleges that Defendant violated the privacy provision of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112(d)(3) & (d)(4), by failing to keep his medical records confidential. In Count II, Plaintiff alleges that the ADA violation alleged in Count I was made intentionally and/or with reckless indifference to Plaintiff's rights, so as to subject Defendant to punitive damages. In Count III, Plaintiff alleges that the disclosure violated his Fourteenth

Amendment right to privacy under the United States Constitution. In Count IV, Plaintiff brings a pendent state common law claim for invasion of privacy. In Count V, Plaintiff alleges that Defendant violated the provisions of Ohio Rev.Code §§ 3701.241–3701.249, which generally prohibit health care providers from disclosing a patient's HIV status without his consent. In Count VI, Plaintiff alleges that the Defendant company was negligent in hiring, training, and supervising its employees with regard to the treatment of confidential medical records, and that such negligence led to the disclosure.

Both sides have moved for summary judgment. The Court discusses the parties' contentions below.

## II. DISCUSSION

### A. Summary Judgment Standard

As an initial matter, the Court sets forth the relative burdens of the parties once a motion for summary judgment is made. Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, ·2552, 91 L.Ed.2d 265 (1986). Of course, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. at 2553. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (*quoting* Fed.R.Civ.P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some

metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

### B. ADA Confidentiality Provision

In Count I, Plaintiff alleges that Defendant violated ADA by failing to keep his medical records confidential. The specific provisions upon which Plaintiff relies appear in the section of ADA which prohibits covered employers from discriminating against qualified individuals with disabilities with regard to employment. 42 U.S.C. § 12112. That section generally prohibits employers from conducting medical examinations or inquiries of job applicants or employees, except to determine the applicant or employee's ability to perform job-related functions. 42 U.S.C. § 12112(d). Plaintiff alleges two violations of this section.

First, Plaintiff alleges that Defendant violated 42 U.S.C. § 12112(d)(3), which requires employers to keep information gained from pre-employment medical examinations "on separate forms and in separate medical files and . . . treated as a confidential medical record." Since the information on Plaintiff's Disability Benefit Request form was not gained in a pre-employment medical examination, this subsection has no applicability to Plaintiff's claim. Plaintiff has not shown a violation of 42 U.S.C. § 12112(d)(3) on these facts.

Second, Plaintiff alleges that Defendant violated 42 U.S.C. § 12112(d)(4), which requires employers to treat information gained in voluntary medical examinations "which are part of an employee health program available to employees at that work site" as confidential medical records. Again, since the information on Plaintiff's Disability Benefit Request form was not gained in a voluntary, on-site medical examination, this subsection has no applicability to Plaintiff's claim. Plaintiff has not shown a violation of 42 U.S.C. § 12112(d)(4) on these facts.

Plaintiff argues, however, that the language of these two subsections evinces Congressional intent to require employers to keep all medical information, especially medical information about disabled employees, confidential. He presents no case law in support of his argument, and the plain language of the statute does not evince such a broad intent. Congress' evident intent in passing the above-cited confidentiality provisions was to protect disabled employees from job discrimination by ensuring that the results of job-related medical examinations would not be kept in their personnel files. The statute goes no further than requiring employers to keep that limited class of medical records confidential, and this Court will not engraft onto the law requirements that Congress has not made. Defendant's motion for summary judgment on Count I is granted.

### C. Reckless Indifference

In Count II, Plaintiff alleges that Defendant violated ADA intentionally and/or with reckless indifference to Plaintiff's rights. As discussed above, Defendant did not violate ADA at all, let alone with reckless indifference to Plaintiff's rights. Defendant's motion for summary judgment on Count II is granted.

### D. Fourteenth Amendment Privacy Right

In Count III, Plaintiff alleges that the disclosure violated his Fourteenth Amendment right to privacy under the United States Constitution. However, the Fourteenth Amendment applies only to governmental action, and Defendant is not a governmental agency. Defendant's motion for summary judgment on Count III is granted.

### E. Invasion of Privacy

In Count IV, Plaintiff brings a pendent state common law claim for invasion of

privacy. In construing questions of state law, the District Court sits as a state court, and must apply state law in accordance with the controlling decisions of the highest court of the state. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). If the state's highest court has not addressed the issue, the District Court must attempt to ascertain how that court would rule if it were faced with the issue. The Court may use the decisional law of the state's lower courts, other Federal Courts construing state law, restatements of law, law review commentaries, and other jurisdictions on the "majority" rule in making this determination. *Grantham & Mann v. American Safety Prods.,* 831 F.2d 596, 608 (6th Cir.1987). A Federal Court should not disregard the decisions of intermediate appellate state courts unless it is convinced by other persuasive data that the highest court of the state would decide otherwise. *Commissioner v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967).

■ Ohio courts recognize the tort of invasion of privacy to encompass four distinct types of wrongful acts: (1) intrusion into the plaintiff's seclusion, solitude, or private affairs; (2) public disclosure of private facts about the plaintiff with which the public has no legitimate concern; (3) publicity that places the plaintiff in a false light; and (4) appropriation of the plaintiff's name or likeness for the defendant's advantage. *Piro v. Franklin Twp.,* 102 Ohio App.3d 130, 144, 656 N.E.2d 1035, 1044 (1995); *Killilea v. Sears, Roebuck & Co.,* 27 Ohio App.3d 163, 166, 499 N.E.2d 1291, 1294 (1985).[1]

■ Yoder alleges an invasion of privacy under the second theory, which is also known as the "publicity" tort. In order successfully to make out a claim under the "publicity" prong, Plaintiff must show five elements:

(1) there must be publicity, *i.e.,* the disclosure must be of a public nature, not private; (2) the facts disclosed must be those concerning the private life of an individual, not his public life; (3) the matter publicized must be one which would be highly offensive and objectionable to a reasonable person of ordinary sensibilities; (4) the publication must have been made intentionally, not negligently; and (5) the matter publicized must not be a legitimate concern to the public.

*Seta v. Reading Rock, Inc.,* 100 Ohio App.3d 731, 740, 654 N.E.2d 1061, 1067 (1995) (quoting *Killilea* at syllabus).

■ Plaintiff can show neither the first nor the fourth element of this test. As to the first element, Plaintiff can prevail only if he shows that the matter has been communicated to "the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Id.* at 740, 654 N.E.2d at 1068; *Killilea,* 27 Ohio App.3d at 166, 499 N.E.2d at 1294. It is not enough to show merely that the matter was communicated by. the defendant to a third person. The record evidence indicates that Plaintiff's HIV/AIDS status was actually communicated to only one unauthorized person. Even if the Court accepts Plaintiff's argument that mail clerk Kornrumpf and supervisor Chroninger should be treated as having received the information because they had the opportunity to read Plaintiff's medical report, the information was communicated to three people at most. Three people do not constitute "the public at large." Plaintiff cannot meet the publicity prong of the test.

■ As to the fourth element, Plaintiff cannot show that Defendant, or its authorized agents, made the disclosure intentionally, even as to Plaintiff's mother. It is undisputed that nothing on the outside of the envelope received in the Aro mail room indicated that it contained a confidential medical

---

**1.** Whether a plaintiff can bring a cause of action for "false light" publicity in Ohio is a matter of some uncertainty. In *M.J. DiCorpo, Inc. v. Sweeney,* 69 Ohio St.3d 497, 634 N.E.2d 203 (1994), the Ohio Supreme Court expressly declined either to adopt or reject such a cause of action. Appellate Courts in Ohio are split on the issue. Compare *Piro* and *Killilea* (recognizing the cause of action) with *Bertsch v. Communications Workers of Am. Local 4302,* 101 Ohio App.3d 186, 655 N.E.2d 243 (1995) and *Rogers v. Buckel,* 83 Ohio App.3d 653, 615 N.E.2d 669 (1992) (not recognizing the cause of action). Since Plaintiff Yoder's invasion of privacy claim does not involve allegations of false light publicity, the Court need not decide this issue.

record. Kornrumpf's testimony that she did not read the form beyond Plaintiff's name, and did not know that it was a confidential medical record, is undisputed. Chroninger's testimony that he did not read the form, and did not know that it was a confidential medical record, is undisputed. It is a logical impossibility for a party intentionally to disclose information that it does not know it has. Furthermore, the disclosure would not have occurred without Plaintiff's mother's intervening act of opening and reading the medical records without authorization from Defendant. Plaintiff cannot meet the intent prong of the test. Defendant's motion for summary judgment on Count IV is granted.

### F. Disclosure of HIV Status by Health Care Provider

In Count V, Plaintiff alleges that Defendant violated an Ohio statute that generally prohibits the unconsented disclosure of another's HIV/AIDS status by any person "that acquires the information while providing any health care service." Ohio Rev.Code § 3701.243. Defendant has moved for dismissal of this Count on the ground that the statute does not apply to it, since it did not acquire the information while providing any health care service. Plaintiff responds that the provision of disability benefits during Plaintiff's leave of absence constitutes a "health care service."

 The statute does not define "health care service," and no Ohio court has had occasion to address the issue of how broadly that term is to be construed. The definition section of the statute does, however, define a "health care provider" as "an individual who provides diagnostic, evaluative, or treatment services." Ohio Rev.Code § 3701.24(A)(11). Using that definition as a guide, the Court finds that "health care service" under the statute includes only diagnostic, evaluative, and treatment services, and does not include tangential items such as disability benefits. Since the statute, by its own terms, does not apply to Defendant, Defendant's motion for summary judgment on Count V is granted.

### G. Negligent Hiring, Training, and Supervision

In Count VI, Plaintiff alleges that Defendant's negligence in hiring, training, and supervising its employees with regard to the treatment of confidential medical records caused the wrongful disclosure of his HIV/AIDS status. Plaintiff can prevail on this claim only if he can show that some employee committed acts constituting a violation of his privacy rights. As discussed above, Plaintiff has not so shown. Defendant's motion for summary judgment on Count VI is granted.

### III. CONCLUSION

For the foregoing reasons, no triable issue of fact exists and Defendant is entitled to prevail as a matter of law. Plaintiff's motion for summary judgment is denied. Defendant's motion for summary judgment is granted.

IT IS SO ORDERED.