**John H. NIX, Plaintiff,**

v.

**Martin HOKE, Defendant.**

**Civil Action No. 1:98CV03039 (ESH).**

United States District Court,
District of Columbia.

April 26, 2001.

Theodore M. Cooperstein, Washington, DC, for John H. Nix.

John H. Nix, Bainbridge, OH, pro se.

David T. Smorodin, U.S. Attorney's Office, Washington, DC, Kerry William Kircher, U.S. House of Representatives, Washington, DC, for Martin R. Hoke.

James Lewis Brochin, Zuckerman, Spaeder, Goldstein, Taylor & Kolker, L.L.P., Washington, DC, for Bernice Ferencz.

David T. Smorodin, U.S. Attorney's Office, Washington, DC, for United States of America.

### MEMORANDUM OPINION

HUVELLE, District Judge.

Before the Court is defendant's second motion to dismiss, plaintiff's opposition and cross-motion for attorney's fees, and defendant's reply. At this stage of the proceedings, plaintiff's complaint has been reduced to only three state law tort claims. Defendant moves under Fed.R.Civ.P. 12(b)(6), to dismiss these remaining claims for failure to exhaust administrative remedies as required under the Federal Tort Claims Act ("FTCA"), or alternatively, for failure to state a claim upon which relief

may be granted. Plaintiff responds that the FTCA does not apply in this case and that his tort claims are viable under applicable state tort law. Plaintiff has also cross-moved for attorney's fees, arguing that he is a "prevailing party" under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, as to the issue of Westfall certification. Because the complaint fails to state any viable tort claim under Ohio law, the Court will grant defendant's motion to dismiss. Since tort suits are exempted from coverage under the EAJA, and plaintiff is not a prevailing party, plaintiff's cross-motion is denied.

## BACKGROUND

Plaintiff's First Amended Complaint, filed on June 8, 1999, alleged nine federal and state law claims against former United States Representative Martin Hoke; Bernice Ferencz, who is plaintiff's former neighbor; and unnamed John Does, arising from the alleged wiretapping of plaintiff's telephones and subsequent cover-up. On August 17, 1999, the Honorable Henry Kennedy dismissed the first six counts, all of which asserted federal causes of action. *Nix v. Hoke*, 62 F.Supp.2d 110 (D.D.C. 1999).[1] Thereafter, the United States intervened by certifying defendant, a former United States Representative, pursuant to the Federal Employees Liability Reform and Tort Compensation Act of 1988 ("Westfall Act"), 28 U.S.C. § 2679. This Court has retained supplemental jurisdiction over plaintiff's pending state law claims against defendant Hoke.

For the purposes of the present motion, the Court will assume, as it must, that plaintiff's account of the facts is true. Both plaintiff and defendant are residents of Ohio. Defendant served as the United States Representative for the Tenth Ohio Congressional District at all times pertinent to this case. In the summer of 1993, plaintiff moved into the Brookside Drive neighborhood, and lived in the home of John Master, a business associate, friend and longtime resident of the neighborhood. Plaintiff assisted Master with personal and business affairs, including the development of a tract of undeveloped land adjacent to Master's property. Plaintiff alleges that certain Brookside Drive residents, who were also defendant's constituents, opposed the development of the property and "banded together to block the property's development." (Compl.¶ 22.) In December 1993, the Brookside Drive residents, including the Cleveland councilman for the ward, Patrick J. O'Malley, allegedly held a meeting to discuss the Master–Nix project and how to "get rid of John Nix." (Compl.¶ 23.) In late 1993 or early 1994, O'Malley and one or more other residents told defendant about the Master–Nix development plans and told him that they opposed the development and wanted to "get rid of" plaintiff in order to stop the development. (Compl.¶ 25.)

---

1. Judge Kennedy also dismissed the complaint as to all other defendants, leaving defendant Hoke as the sole remaining defendant. The case was subsequently transferred to the undersigned. Much of the history relating to this matter is set forth in Judge Kennedy's decision and in the myriad of lawsuits that Nix or his friend Master have filed in federal and Ohio state courts. *See, e.g., Nix v. Sword*, 168 F.3d 490 (6th Cir.1998) (table decision); *Nix v. O'Malley*, 160 F.3d 343 (6th Cir.1998); *Master v. Federal Bureau of Investi-*gation, 926 F.Supp. 193 (D.D.C.1996); *State ex rel. Nix v. City of Cleveland*, 83 Ohio St.3d 379, 700 N.E.2d 12 (1998); *State ex rel. Master v. City of Cleveland*, 76 Ohio St.3d 340, 667 N.E.2d 974 (1996); *State ex rel. Master v. City of Cleveland*, 75 Ohio St.3d 23, 661 N.E.2d 180 (1996); *Nix v. Chalko*, 1998 WL 72495 (Ohio Ct.App. Feb. 19, 1998); *Master v. Chalko*, 1997 WL 298260 (Ohio Ct.App. June 5, 1997); *Master v. O'Malley*, 1996 WL 157340 (Ohio Ct.App. April 4, 1996).

In late 1993, plaintiff and Master filed a complaint against certain residents of Brookside Drive alleging defamation, invasion of privacy, and intentional infliction of emotional distress. Plaintiff alleges that O'Malley and a friend, Robert Roche, then conspired to wiretap plaintiff's telephones in order to find incriminating information about him, and pursuant to this conspiracy, they wiretapped his telephones in early February 1994. Plaintiff asserts that various residents of Brookside Drive and others were aware of the wiretapping and were given copies of wiretap tapes and/or transcripts of those tapes. He contends that the wiretapping continued until March 29, 1994, when he became aware of the wiretaps.[2] Plaintiff alleges that O'Malley disclosed his plan to wiretap plaintiff's phones to defendant. While plaintiff contends that defendant knew of the wiretapping while it was taking place, he does not claim that defendant played any role in the wiretapping; that defendant ever possessed, heard, or read the alleged tapes and transcripts; or that defendant ever gave copies of the tapes and transcripts to anyone else.

Upon learning of the alleged wiretaps, plaintiff made a criminal complaint to the Federal Bureau of Investigations ("FBI"). The case was assigned to Special Agent ("SA") Richard Hoke, an alleged relative of defendant and a friend of O'Malley. Plaintiff alleges that defendant told SA Hoke that O'Malley had intercepted certain of plaintiff's cordless telephone conversations, that plaintiff was causing problems in the neighborhood, and that defendant had reason to believe that O'Malley was working in conjunction with the Cleveland Police Department in investigating plaintiff. Plaintiff alleges that defendant dissuaded SA Hoke from pursuing the investigation, and that if the FBI had conducted a "legitimate investigation," the "fact that violations of federal law had occurred would have been discovered," leading to federal prosecutions of O'Malley, Roche, and others. (Compl.¶ 60.)

Plaintiff and other alleged victims of the alleged wiretapping filed a lawsuit based on the wiretapping, *Master, et al. v. Sword, et al.,* No. 1:94cv0849, in the United States District Court for the Northern District of Ohio. Plaintiff claims that defendant assured the Brookside Drive residents that "he would see to it that the wiretapping would not cause any problems for them" and that they would be "protected." (Compl.¶¶ 67–68.) Plaintiff also claims that the *Sword* defendants were told that defendant was providing them assistance to make sure they would not have to testify, or that if they did testify, that no harm would befall them if they denied knowledge of the wiretapping. In June 1994, John Master filed another suit in the Cuyahoga County Court of Common Pleas styled *Master, et al. v. Chalko, et al.,* Case No. 272373, asserting a legal malpractice claim against his former attorney.

Plaintiff alleges that defendant conspired with the Brookside Drive residents to cover-up the alleged wiretapping and to conceal who did the wiretapping and how it was done. This included allegedly giving assistance to Bernice Ferencz, a Brookside Drive resident who had been called to testify in the *Chalko* and *Sword* cases. Plaintiff alleges that defendant contacted an attorney to aid Ferencz in quashing the subpoena for her to testify in the *Chalko* case, as well as "counsel[ing] her in furtherance of their cover-up." (Compl.¶ 101.) Plaintiff alleges that defen-

---

**2.** The complaint does not make clear exactly when the wiretapping ended, although plaintiff contends that the wiretapping was continuous during February and March of 1994, and that he discovered the wiretaps around March 29, 1994.

dant filed a false affidavit in the *Sword* matter, wherein defendant asserted that he did not know about the alleged wiretapping until he read about it in the newspaper in March 1995.

Finally, plaintiff contends that defendant engaged in various efforts to tamper with witnesses in the *Sword* and *Chalko* cases. Plaintiff claims that defendant conspired with O'Malley and Michael Dobronos, another Brookside Drive resident, to "get Dobronos out of town" so that he could not give a deposition in the pending *Sword* and *Chalko* cases. (Compl.¶ 108.) Plaintiff alleges that the three men "plotted to have Dobronos take a trip to Hawaii on the date of his deposition" in order to avoid the deposition and continue the cover-up. (Compl.¶ 110.) Plaintiff claims that defendant and O'Malley did in fact "cause[ ] Dobronos to take these actions on the morning of April 4, 1995." (Compl.¶ 112.) Plaintiff alleges further that defendant advised and assisted Ferencz and one or more other Brookside Drive residents to give false testimony in the *Chalko* and *Sword* matters.

Based on these allegations, plaintiff brings claims of 1) prima facie tort, 2) invasion of privacy, and 3) obstruction of/interference with legal remedies. This Court finds that even assuming the foregoing allegations to be true, plaintiff has failed to state any viable state tort claim.

## LEGAL ANALYSIS

I. Standard of Review and Applicable Law

In considering a motion to dismiss for failure to state a claim, this Court proceeds as though all allegations in plaintiff's complaint are true and construes them in the light most favorable to plaintiff. *Nix,* 62 F.Supp.2d at 113–14 (citations omitted). "Dismissal under Rule 12(b)(6) is proper when, taking the material allegations of the complaint as admitted, and construing

them in plaintiff's favor, the court finds that the plaintiff has failed to allege all the material elements of his cause of action." *Weyrich v. The New Republic, Inc.,* 235 F.3d 617, 623 (D.C.Cir.2001) (internal citations omitted). Defendant moves to dismiss plaintiff's remaining claims arguing that 1) because Westfall certification is proper and the suit is covered by the Federal Tort Claims Act, plaintiff's claims should be dismissed for failure to exhaust administrative remedies, and 2) even if Westfall certification is improper, plaintiff has failed to state any viable state tort law claims, and in addition, his tort claims are barred by the statute of limitations. Because the Court finds that plaintiff has failed to state a tort claim for which relief may be granted, the Court need not address the propriety of the Westfall certification or the exhaustion of administrative remedies argument.

 In order to determine whether plaintiff has stated a claim for relief, this Court must first determine whether District of Columbia or Ohio law will apply. "When deciding state-law claims under diversity or supplemental jurisdiction, federal courts apply the choice-of-law rules of the jurisdiction in which they sit." *Ideal Electronic Security Co., Inc. v. International Fidelity Ins. Co.,* 129 F.3d 143, 148 (D.C.Cir.1997). In resolving choice of law questions, the District of Columbia employs a governmental interests approach, which balances the competing interests of the two jurisdictions. *Estrada v. Potomac Elec. Power Co.,* 488 A.2d 1359, 1361 n. 2 (D.C.1985); *Myers v. Gaither,* 232 A.2d 577, 583 (D.C.1967). *See also Godbey v. Frank E. Basil, Inc.,* 603 F.Supp. 775, 777 n. 8 (D.D.C.1985). In determining which jurisdiction has the greater interest in having their own laws apply, this Court considers "the place of the injury, the place where the conduct occurred, the domicile of the parties, [and] the place where the

relationship between the parties is centered." *Myers,* 232 A.2d at 583. *See also Estrada,* 488 A.2d at 1361 n. 2 (citing Restatement (Second) of Conflicts § 145).

▬▬ Applying these factors to the case at hand, this Court finds that Ohio has a greater interest in the determination of this claim.[3] Both parties are residents of Ohio. Defendant was the United States Representative of a Congressional district in Ohio during the relevant time period. Plaintiff's alleged injury occurred in Ohio. The relationship between the parties is centered in Ohio, and in particular, in the neighborhood where the property dispute arose. While it appears from the complaint that plaintiff alleges that defendant committed the allegedly tortious acts in both Ohio and the District of Columbia, because of the more significant relationship this matter has with Ohio and the attendant interest of that State in having

its own laws apply, this Court finds that Ohio tort law should be applied.[4]

## II. Prima Facie Tort

▬▬ Plaintiff's first state law tort claim is based on the theory of prima facie tort. Plaintiff concedes that Ohio law does not recognize such a claim.[5] (Opp. at 8.) In fact, the Ohio Supreme Court has specifically declined to adopt the theory of prima facie tort. *Costell v. Toledo Hosp.,* 38 Ohio St.3d 221, 527 N.E.2d 858, 860 (1988) ("We note that Ohio's courts have not adopted the above-described intentional tort theory. Moreover, such theory has been expressly rejected.... [W]e are not at this time persuaded that the adoption of the prima facie tort theory would contribute to that body of the law."). There is no basis for this Court to create a new cause of action under Ohio law where the Ohio Supreme Court has refused to do so. Therefore, this claim will be dismissed.[6]

---

3. The parties failed to address the conflict of laws issues in their briefs. While this Court finds that Ohio law does apply, analysis under District of Columbia law, which would lead to the same outcome, is also briefly noted herein in footnotes.

4. With respect to applicable statutes of limitations, however, this Court reaches a different conclusion. When exercising supplemental jurisdiction, the Court "applies the forum state's choice-of-law rules and the state statute of limitations indicated thereby." *A.I. Trade Finance, Inc., v. Petra Int'l Banking Corp.,* 62 F.3d 1454, 1463 (D.C.Cir.1995). Because the District of Columbia treats the statute of limitations as a procedural issue rather than a substantive one, the law of the forum state applies, as it does with respect to all procedural matters. *Material Supply Int'l, Inc. v. Sunmatch Indus. Co., Ltd.,* 146 F.3d 983, 991–92 (D.C.Cir.1998); *A.I. Trade Finance,* 62 F.3d at 1458. Therefore, the District of Columbia statutes of limitations govern plaintiff's claims in this case.

5. Similarly, District of Columbia law has not recognized a cause of action for prima facie tort. *See Schwartz v. Franklin National Bank,* 718 A.2d 553, 556–57 (D.C.1998) (noting that

the District of Columbia has not recognized prima facie tort); *Art Metal–U.S.A., Inc. v. United States,* 577 F.Supp. 182, 184 (D.D.C. 1983) ("District of Columbia courts have not embraced a form of generic tort like the prima facie tort ...").

6. Even if this Court were to recognize such a claim, it would likely be time-barred under the District of Columbia's general three-year statute of limitations for all civil claims. *See* D.C.Code § 12–301(8). The record is incomplete with respect to the exact chronology, however, rendering it impossible to determine with any precision when defendant's last alleged tortious act occurred. If, as it appears, the last alleged act was plaintiff's alleged interference with witness testimony in the *Chalko* case, which was scheduled for trial on November 27, 1995 (Compl.¶ 113), the statute of limitations most likely expired late in 1998. Plaintiff filed the First Amended Complaint in this case in June 1999, but under Fed.R.Civ.P. 15(c)(2), the First Amended Complaint could arguably relate back to the original Complaint, filed on December 12, 1998. However, since there is no cause of action for prima facie tort, the Court need not resolve the statute of limitations issue.

## III. Invasion of Privacy

 Plaintiff's second state law tort claim alleges that defendant invaded his privacy. Ohio law recognizes four distinct theories of tortious invasion of privacy: (1) intrusion upon seclusion; (2) public disclosure of private facts; (3) false light publicity; and (4) appropriation of name or likeness. *Yoder v. Ingersoll–Rand Co.,* 31 F.Supp.2d 565, 570 (N.D.Ohio 1997). *See also Wolf v. Regardie,* 553 A.2d 1213, 1216–17 (D.C.1989) (recognizing these same torts under District of Columbia law). Plaintiff asserts two theories here—intrusion upon seclusion and public disclosure of private facts. Even assuming the facts alleged in the complaint to be true, plaintiff has not stated a claim for either type of invasion under Ohio law.

 The Ohio Supreme Court has described intrusion upon seclusion as "the wrongful intrusion into one's private activities in such a manner as to outrage or to cause mental suffering, shame, or humiliation to a person of ordinary sensibilities." *Sustin v. Fee,* 69 Ohio St.2d 143, 431 N.E.2d 992, 993 (1982) (citation omitted). Ohio courts have noted that, as a general proposition, wiretapping is "the kind of act or conduct that fits the definition of an intrusion" upon another person's seclusion. *LeCrone v. Ohio Bell Telephone Co.,* 120 Ohio App. 129, 201 N.E.2d 533, 536 (1963). In this case, however, there is no allegation that defendant took any part in the alleged wiretapping. Plaintiff contends that Roche and O'Malley planned and executed the wiretap. (Compl.¶¶ 32–33, 41.) Plaintiff essentially claims that defendant was aware of their wiretapping activities,

did nothing to stop them, and assisted a cover-up of the activities after the fact. (Compl.¶¶ 35, 39, 46.) However, these allegations are insufficient as a matter of law to establish an invasion of plaintiff's privacy *by the defendant.* Plaintiff's allegation in paragraph 183 of his complaint that "[b]y participating in and conducting the wiretapping of John Nix, and its attendant concealment and cover-up, whether before or after the fact, Hoke ... invaded Nix's privacy," is also insufficient to plead invasion of privacy. Plaintiff has, in fact, alleged no facts to support his assertion that *defendant* either "participated in" or "conducted" the wiretapping. Because plaintiff has failed to allege any conduct by defendant that would establish this cause of action, plaintiff has failed to state a claim for which relief can be granted under Ohio law.[7]

 Plaintiff also argues that he has stated a claim for public disclosure of private facts. In order to state a claim for this cause of action under Ohio law, plaintiff must allege:

(1) publicity, *i.e.,* the disclosure must be of a public nature, not private; (2) the facts disclosed must be those concerning the private life of an individual, not his public life; (3) the matter publicized must be one which would be highly offensive and objectionable to a reasonable person of ordinary sensibilities; (4) the publication must have been made intentionally ...; and (5) the matter publicized must not be a legitimate concern to the public.

7. In the District of Columbia, intrusion upon seclusion has three elements: (1) an invasion or interference by physical intrusion, by use of a defendant's sense of sight or hearing, or by use of some other form of investigation or examination; (2) into a place where the plaintiff has secluded himself, or into his private or secret concerns; (3) that would be highly offensive to an ordinary, reasonable person. *Wolf,* 553 A.2d at 1217 (citations omitted). As discussed above, plaintiff's failure to allege any facts to support his allegation that defendant participated in the wiretapping prevents him from making this claim based on either Ohio or D.C. law.

*Seta v. Reading Rock, Inc.*, 100 Ohio App.3d 731, 654 N.E.2d 1061, 1067 (1995) (citation omitted). Ohio courts have clarified "publicity" to mean "communicating the matter to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge...." *Id.* 654 N.E.2d at 1068 (citation omitted).

■■■■■■ Again, plaintiff has not alleged any facts to support his claim that *defendant* disclosed plaintiff's private conversations to anyone.[8] Although there are allegations that certain Brookside Drive residents distributed copies of the alleged tapes to other parties, none of these allegations pertains to defendant. Moreover, plaintiff does not demonstrate the requisite level of publicity. He alleges that the wiretap tapes and transcripts were distributed to or provided to "certain Brookside Drive residents, Cleveland Police officer Sue Sazima, and various attorneys." (Compl.¶ 47.) This falls considerably short of a communication to the "public at large," or of a claim that the information has become "public knowledge" in any sense. Having failed to allege these elements of the cause of action, plaintiff's claim for public disclosure of private facts must be dismissed.[9]

## IV. Interference with Legal Remedy

■■■ Plaintiff's third tort claim is based on defendant's alleged interference with plaintiff's civil suits against various Brookside Drive residents. Plaintiff claims that defendant submitted a false affidavit in the *Sword* matter (Compl.¶ 105), plotted to prevent Michael Dobronos from giving a deposition in both the *Sword* and *Chalko* matters (Compl.¶¶ 108–112), and induced several Brookside Drive residents to testify falsely in both matters (Compl.¶¶ 120, 124–26). To state a claim for interference with a legal remedy in Ohio, a plaintiff must show: (1) pending or probable litigation involving the plaintiff, (2) knowledge on the part of the defendant that litigation exists or is probable, (3) willful destruction of evidence by defendant designed to disrupt the plaintiff's case, (4) disruption of the plaintiff's case, and (5) damages proximately caused by the defendant's acts. *Smith v. Howard Johnson Co., Inc.*, 67

8. Similarly, plaintiff has failed to state a claim under D.C. law. In the District of Columbia, public disclosure of private facts consists of: (1) publicity, (2) absent any waiver or privilege, (3) given to private facts, (4) in which the public has no legitimate concern, and (5) which would be highly offensive to a reasonable person of ordinary sensibilities. *Wolf*, 553 A.2d at 1220. In *Vassiliades v. Garfinckel's*, 492 A.2d 580 (D.C.1985), the court noted that "any broadcast over the radio, or statement made in an address to a large audience, is sufficient to give publicity," and described the determinative factor as "whether the communication is public instead of private." *Id.* at 587. Again, the publicity alleged in this case does not rise to the level envisioned in the public disclosure tort that D.C. courts have recognized, and moreover, is not tied in any way to the defendant.

9. Even if plaintiff had stated a claim under Ohio law, the claims would likely be time-barred under the District of Columbia's statute of limitations relating to this type of invasion of privacy claim. Under District of Columbia law, there is a one-year statute of limitations applicable to libel, slander, and other similar intentional torts. *See* D.C.Code § 12–301(4). This bar has been applied to invasion of privacy claims in the District on the grounds that this type of claim is essentially a type of defamation. *Grunseth v. Marriott Corp.*, 872 F.Supp. 1069, 1074–75 & n. 12 (D.D.C.1995); *Doe v. Southeastern Univ.*, 732 F.Supp. 7, 8 (D.D.C.1990). With respect to public disclosure of private facts, the record offers no indication when the last disclosures are alleged to have taken place, but to the extent the alleged disclosures occurred before December 1997, they are time-barred, even assuming that the allegations of the amended complaint relate back to the first complaint for statute of limitations purposes.

Ohio St.3d 28, 615 N.E.2d 1037 (1993). Plaintiff fails to allege the third and fifth elements.

■■■ First, plaintiff has failed to allege any interference with any "evidence." It appears that plaintiff is attempting to fit a claim for perjury, subornation of perjury, and witness tampering into a civil claim for interference with legal remedies. Under Ohio law, however, there must be "willful destruction of evidence" in order for defendant to be liable under this cause of action. *Id.* Ohio courts have expanded this definition to include alteration and concealment, as well as destruction, of evidence. *Drawl v. Cornicelli*, 124 Ohio App.3d 562, 706 N.E.2d 849, 851–52 (1997). It is clear from Ohio precedent, however, that liability under this cause of action has not been extended to perjury, subornation, or witness tampering, but instead has been limited to interference with physical evidence. *See, e.g., Matyok v. Moore*, 2000 WL 1232417 at *3 (Ohio App.2000) (broken staircase); *Drawl*, 706 N.E.2d at 850–51 (medical records); *Sheets v. Norfolk Southern Corp.*, 109 Ohio App.3d 278, 671 N.E.2d 1364, 1370 (1996) (tape recordings); *Webster v. The Toledo Edison Co.*, 1996 WL 629486, *3 (Ohio Ct.App.1996) (tire studs); *Tomas v. Nationwide Mutual Ins. Co.*, 79 Ohio App.3d 624, 607 N.E.2d 944 (1992) (vehicle wreckage). Plaintiff does not cite, and the Court cannot locate, any case in which Ohio courts have held a party liable for tampering with a witness or procuring false testimony. Moreover, the Supreme Court of Ohio has noted that "allegations constituting perjury, subornation of perjury, and conspiracy to commit perjury . . . are punishable under the criminal statutes but . . . for public policy reasons, may not be the basis of a civil lawsuit." *Costell*, 527 N.E.2d at 860. Given this clear indication that Ohio is unwilling to impose civil liability for the type of conduct alleged here, the Court must dismiss this claim.

■■■ Even assuming *arguendo* that this cause of action covers false testimony, Ohio law requires the plaintiff to show that defendant's acts proximately caused plaintiff's damages. This requires a showing that (1) plaintiff pursued the initial civil action, and was unsuccessful because of the absence of the destroyed evidence, or at the very least, that the destruction of the evidence in question made pursuing the initial claim impossible; and (2) that the destroyed evidence would have enabled plaintiff successfully to pursue the initial civil action. *Tomas*, 607 N.E.2d at 948, 949 ("[T]here must, at the very least, be some proximate relationship between the failure of success in the underlying action and the unavailability of the destroyed evidence."); *see also Holmes v. Amerex Rent–A–Car*, 710 A.2d 846, 850–51 (D.C. 1998) (discussing *Tomas* ). "Speculation based upon possibility is too tender a reed upon which to base a claim for relief." *Tomas*, 607 N.E.2d at 950. Plaintiff does not allege that the lawsuits at issue had unfavorable outcomes or that they were rendered impossible. While the Court cannot locate any published opinion in the *Master v. Sword* case filed in the Northern District of Ohio, an opinion available on Westlaw in the *Master v. Chalko* case indicates that the Court of Appeals of Ohio, Eighth District, reversed a trial court judgment for plaintiffs. *Master v. Chalko*, 1997 WL 298260 (Ohio Ct.App. June 5, 1997). However, based on that opinion, which describes the case as a legal malpractice claim, the alleged wiretapping has no apparent significance or relevance to that case. While plaintiff contends that absent defendant's alleged interference in the FBI investigation, violations of federal law would have been uncovered (Compl.¶ 60), plaintiff makes no allegation that absent the alleged interference, plaintiff would have been able to successfully pursue either the *Sword* or *Master* civil

actions. Plaintiff's conclusory allegation that defendant's actions disrupted his cases and proximately caused his damages (Compl.¶ 188), which is unsupported by any factual allegations, is insufficient to state a claim of interference with legal remedies.[10]

Because plaintiff has failed to state a claim upon which relief may be granted, the Court need not address the issue of whether Westfall certification in this case is proper or whether plaintiff has failed to exhaust administrative remedies under the FTCA. Moreover, because this is a tort case, and therefore excluded from the EAJA provision for attorney's fees, plaintiff's cross-motion for attorney's fees is denied. *See* 28 U.S.C. § 2412(d)(1)(A) (excluding tort cases from the EAJA provision for attorney's fees); *In re Turner*, 14 F.3d 637, 640–41 (D.C.Cir.1994) (same). In addition, contrary to plaintiff's argument, he is not a "prevailing party" on the issue of Westfall certification, for the Court need not decide whether certification is proper given the resolution of this motion.

## CONCLUSION

For the reasons set forth above, defendant's motion to dismiss plaintiff's complaint is granted and plaintiff's cross-motion for attorney's fees is denied.

### *ORDER*

Upon consideration of Defendant's Second Motion to Dismiss [75–1] it is hereby **ORDERED** that the motion is **GRANTED**. Upon consideration of Plaintiff's Cross–Motion for Attorney's Fees [78–1], it is hereby **ORDERED** that the motion is **DENIED**. The above-captioned complaint is hereby dismissed with prejudice.

**SO ORDERED.**

---

**10.** The District of Columbia has not recognized a cause of action for intentional interference with legal remedies. The D.C. Court of Appeals only recently recognized a cause of action for negligent or reckless spoliation of evidence, *Holmes*, 710 A.2d at 848, but has not recognized an action for intentional spoliation. Even if such a cause of action were recognized under D.C. law, plaintiff would face the same problems he faces under Ohio law. In *Holmes*, the court laid out the elements for negligent or reckless spoliation of evidence: (1) existence of a potential civil action; (2) a legal or contractual duty to preserve evidence which is relevant to that action; (3) destruction of that evidence by the duty-bound defendant; (4) significant impairment in the ability to prove the potential civil action; (5) a proximate relationship between the impairment of the underlying suit and the unavailability of the destroyed evidence; (6) a significant possibility of success of the potential civil action if the evidence were available; and (7) damages adjusted for the estimated likelihood of success in the potential civil action. 710 A.2d at 854. Even assuming that the requirement of a special duty to preserve would not apply outside of the realm of negligence, *see id.* at 849, plaintiff still has not alleged adequate facts to establish "destruction" of "evidence." Moreover, no facts have been alleged to show significant impairment in the civil suits or a significant likelihood of success absent the alleged interference. Therefore, plaintiff has failed to state a claim for which relief can be granted in this jurisdiction.